UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Donta Alston, Kevin Austin, Jonathan Bennett, and Joel Washington, | ) ) ) ) |
| Plaintiffs | ) Case No.: 2:19-cv-2713-RMG-BM ) |
| vs. | ) ) ) COMPLAINT |
| The Boeing Company, | ) ) |
| Defendant. | ) ) ) |

## INTRODUCTION

1.    Plaintiffs Donta Alston, Kevin Austin, Jonathan Bennett, and Joel Washington (hereinafter referred to as "Plaintiffs", "Plaintiff Alston", "Plaintiff Austin", "Plaintiff Bennett", or "Plaintiff Washington" as appropriate) bring this action against Defendant The Boeing Company (hereinafter referred to as "Defendant"), based on Defendant's actions in discriminating against Plaintiffs as indicated below on the basis of their race, retaliation, breach of contract, breach of contract with fraudulent intent, workers' compensation retaliation (as to Plaintiff Austin Only) and promissory estoppel.

## JURISDICTION AND VENUE

2.    The Court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1343 and 42 U.S.C. Section 2000e (5), this bring a proceeding to enforce rights and remedies secured under 42 U.S.C. Section 1981 and other Federal relief.  This Court also has pendant and supplementary jurisdiction over so much of this action as is based on state law.

3.    Venue is proper in the Charleston Division, because the causes of action arose therein, the acts and practices complained of occurred there and it is where the Defendant does business and may be found.

## PARTIES

4.    Plaintiffs are African American male citizens of the United States of America who reside in Berkeley, Clarendon, and Charleston Counties, South Carolina within this Judicial District.  All Plaintiffs are currently employed with Defendant.

5. The Defendant, located in Charleston, South Carolina, is an organization with operations in the State of South Carolina and is legally organized and existing under the Code of Laws of the State of Delaware.

## FACTS

### I. As to Plaintiff Donta Alston

6. Plaintiff Donta Alston is an African American male who has been a longstanding employee of the Defendant for many years.

7. Even prior to beginning his employment with Boeing Plaintiff Alston had many years of field experience but was underpaid as compared to similarly situated Caucasian workers.

8. Plaintiff Alston is employed in Defendant's Paint Department as a painter. Defendant has used Plaintiff Alston to train its lesser qualified and better paid Caucasian workers, but yet Defendant has neither promoted Plaintiff Alston nor brought his pay up to similar levels as that of Plaintiff Alston's similarly situated Caucasian counterparts. This is true throughout 2016 up through the current date.

9. Throughout 2016 through the current date, Plaintiff Alston has requested numerous times from upper management for raises and has asked upper management why he was not getting the same amount of pay as his similarly situated Caucasian colleagues only to be rebuffed and to have his concerns fall on deaf ears. This is clearly blatant race discrimination on the part of the Defendant, violations of its on policies and procedures and promises upon which Plaintiff Alston relied and upon which Plaintiff's breach of contract claim is based, and is retaliation against Plaintiff Alston as he was simply told by the Defendant to "stop worrying about the money".

10. Plaintiff's humiliation persists to the present date as Plaintiff is one of the most qualified painters in Defendant's paint shop and he continually trains its Caucasian painters and managers in the art of painting while being denied promotions and while receiving a fraction of their pay and while being ignored by Defendant's Human Resources Department.

11. Plaintiff Alston has been a blatant victim of race discrimination, retaliation, breach of contract, as well as violations of other state and federal laws which has caused him and is still currently causing him to suffer tremendous damages in terms of his physical, mental, and emotional health as well as suffering other ongoing actual and compensatory damages as a result of Defendant's unlawful treatment towards him.

### II. As to Plaintiff Kevin Austin

12. Plaintiff Kevin Austin is an African American Male who is a long-standing employee of the Defendant and who is currently still employed with the Defendant. Plaintiff Austin has a history of positive and admirable job performance, but nevertheless has been a victim of severe and pervasive race discrimination and Workers' Compensation Retaliation meted out to him by the Defendant by and through its Management staff.

13.     Specifically, Plaintiff Austin works in the Paint Shop under the management supervision of Eric Infinger (WM), Manager.

14.     Infinger is a well-known racist within the management staff of the Defendant who has a long-standing history of racially discriminating and retaliating against African Americans and against individuals who complain of on the job race discrimination or retaliation.

15.     Plaintiff Austin went out on Workers' Compensation Leave due to an on the job injury on June 20, 2019.

16.     On August 30, 2019, Plaintiff Austin returned to work and found that he had been demoted from his previous work position.

17.     Specifically, prior to going out on approved Workers' Compensation Leave, Plaintiff worked previously on C Shift for a year and had a shift preference.  Upon his return to work, he found that his new shift was changed to Monday through Friday First Shift with no shift preference to begin on September 20, 2019 based upon alleged "business needs".   This was a demotion as Plaintiff lost his shift preference. The alleged reasons given by the Defendant for this demotion are pretextual as the only individuals moved from C Shift are African Americans as the Caucasian employees were not demoted.  In fact, the African American employees, to include Plaintiff Austin, were not given training nor lead position opportunities and, as a result, suffered in terms of promotional opportunities.

18.     To add insult to Plaintiff's Workers' Compensation injuries, on August 30, 2019, Infinger came to Plaintiff Austin and indicated to Plaintiff Austin that he did not want Plaintiff Austin to work in the tool room while on light duty despite the fact that he allowed Caucasian workers to do such while working light duty.

19.     This was clearly a blatant act of both unlawful retaliation against Plaintiff on account of his Workers' Compensation Retaliation claims as well as race discrimination and harassment.

20.     Plaintiff Austin has continually worked under a constant barrage of racial harassment, mistreatment, racially disparate mistreatment, workers' compensation retaliation, and violation of Defendant's own handbook policies procedures and promises to Plaintiff Austin.

21.     Plaintiff Austin was retaliated against by being issued a warning due to his having made protected complaints of race discrimination and retaliation.  Defendant breached both its employment contract and racially discriminated against Mr. Austin and retaliated against Mr. Austin in doing such because its actions were in direct contravention of its own policies and procedures under its employment handbook and pursuant to the Employee Corrective Action Process Requirement Matrices (ECAPR) which sets forth disciplinary processes which Defendant completely disregarded and failed to follow.

22. Plaintiff Austin as well as the other Plaintiffs below filed ethics complaints which were rebuffed continually by the Defendant as stated below and the Defendant continually issued a

barrage of unlawful race discrimination, retaliation, breaches of contract, and other utterly intolerable violations of state and federal law as fully stated below.

23. As a result of his unlawful treatment by the Defendant, Plaintiff Austin has suffered tremendously and is still currently suffering in terms of his mental, emotional, and physical health as well as suffering other ongoing actual and compensatory damages as a result of Defendant's unlawful treatment towards him.

### III. *As to Plaintiff Johnathan Bennett*

24. Plaintiff Jonathan Bennett is an African American male who has been an employee with the Defendant since 2013. Plaintiff Bennett has loyally worked his job in an admirable manner, but has, nevertheless, been subjected to an environment replete with constant racial harassment, race discrimination, retaliation, and violations of his contractual rights and employment rights under state and federal law all at the hands of the Defendant.

25. Specifically, on or around 2017, Eric Infinger (WM), Manager, became Plaintiff's on and off again Manager.

26. Infinger blatantly showed racial favoritism towards Caucasian employees to the direct detriment of African American workers.

27. Plaintiff Bennett complained to Human Resources in August 2017 and courageously complained of the racially disparate treatment being meted out by Infinger, but nevertheless, his complaints fell on deaf ears as his complaints were merely rebuffed by the Defendant which failed to comply with its own policies and procedures regarding such matters. Plaintiff Bennett contends that such failure breached the employment contract upon which Plaintiff Bennett relied in making such complaints to the Defendant.

28. During the course of 2017, Infinger made it a pattern and practice of assigning the African American employees to work in the Component Paint Shop Building 8822 which was dirty and hazardous as compared to the other work buildings at the plant as it involved mostly sanding and prep work.

29. Infinger routinely allowed Caucasian employees to work on the "flight line" doing cleaner and more desirable work for no other reason than the fact that they are Caucasian. This pattern and practice of Infinger was clearly racially discriminatory.

30. Despite Plaintiff Bennett's continual complaints regarding Infinger's blatant race discrimination, the Defendant did nothing to address Plaintiff Bennett's concerns, but instead allowed Infinger to ramp up his racially discriminatory, pretextual, and retaliatory treatment towards Mr. Bennett.

31. On or around 2018 while working near David Lakes and David Dugger, both of whom are Caucasian workers in Defendant's paint shop, Lakes indicated to Plaintiff Bennett that the rules didn't apply to him and other Caucasian workers, but that Plaintiff Bennett needed to make sure

to put and keep his safety glasses on because he is black. Plaintiff Bennett told Lakes to put on his safety glasses as well to which Lakes replied that the white people didn't have to follow the rules.

32. Plaintiff Bennett complained of this incident to Defendant's Human Resources Department to no avail. In fact, Plaintiff was in a car accident shortly following this incident and upon his return to work he found out that Lakes was actually his new Lead in the paint shop. As a result, Plaintiff Bennett began to suffer from anxiety attacks as a result of having a blatantly racist as a lead. Plaintiff Bennett contacted the Boeing EAP counselor to receive several counselings as a result thereof.

33. Since 2018 up and until the current date, Plaintiff has continued to suffer at the hands of Infinger and has had to continually work in an environment where he has had to experience and witness African Americans, to include himself, being treated in a racially disparate and hostile and retaliatory manner.

34. As a result, thereof, Plaintiff has suffered tremendously in terms of his mental, physical, and emotional health as well as suffering other ongoing actual and compensatory damages as a result of Defendant's unlawful treatment towards him.

## IV. *As to Plaintiff Joel Washington*

35. Plaintiff Joel Washington is an African American male who has been a loyal and hardworking employee of the Defendant for the past five years.

36. During the first two years of his tenure with the company he worked as a contractor in building 8819 cell 140 area. During this time period he experienced racial discrimination, racially disparate treatment and adversity to include being told to stay late and work extra shifts without the same level of notification given his similarly situated Caucasian counterparts and mandatory weekend overtime.

37. Plaintiff Washington complained of this racially disparate treatment by making protected complaints to Defendant's upper management in accordance with Defendant's policies and procedures which constitute Plaintiff Washington's relied upon employment handbook and employment promises made to him by Defendant, but, nevertheless, Plaintiff was rebuffed and his complaints were not addressed by the Defendant.

38. Defendant made it clear even during this early time period of Plaintiff Washington's employment that it had no concern regarding the complaints of Mr. Washington and other African American workers regarding protected activity and complaints of race discrimination and instead used these complaints as an opportunity to institute a long-standing campaign of continual retaliation against Mr. Washington.

39. On or around January 2018, Plaintiff Washington started working first shift in the paint shop with Eric Infinger (WM) as his manager.

40. On days when work was slow, Infinger made it a pattern and practice to send a group of African American workers, to include, Plaintiff Washington to Building 8822 within Defendant's Plant. This was an undesirable transfer based upon the work conditions in Building 8822 which were dirty and hazardous as compared to Plaintiff Washington's standard work conditions and was clearly based upon racially discriminatory intent, veiled intentions, and pretextual and racially hostile treatment by Infinger.

41. In addition, Defendant disciplined Plaintiff Washington more harshly than similarly situated Caucasian employees for similar offenses to include allegations of failing to work without use of a harness. In doing such, Defendant disregarded its Employee Corrective Action Process Requirement Matrix which makes up part of Plaintiff's contract claim and which outlines Defendant's disciplinary procedures. Defendant's actions in doing such constitute direct race discrimination and retaliation for Plaintiff's complaints of race discrimination and retaliation.

42. Plaintiff Washington, during this time period, also applied for Level B positions through Infinger and completed all necessary position qualifications as this position would have been a promotion for which Plaintiff Washington was fully qualified to receive. Infinger held up Plaintiff Washington's promotion for an extended period of time while allowing numerous lesser qualified Caucasians to receive promotions over Plaintiff Washington. By the time Plaintiff Washington finally got the promotion, he received a pay increase which was less than half that of his similarly situated Caucasian counterparts! This is clearly an act of race discrimination, retaliation for Plaintiff's earlier protected complaints of race discrimination, and violations of Plaintiff's employment contract and promissory estoppel.

43. Plaintiff Washington, in addition to that stated above, was deprived of training opportunities which were given to his similarly situated Caucasian counterparts. Plaintiff Washington states that this is clearly more of the same as stated above and is merely a pretextual attempt to stifle his further promotability within the company and a veiled attempt to pretextually constructively terminate his employment all in an attempt to racially discriminate and retaliate against him in violation of state and federal law. Mr. Washington has suffered and is still suffering tremendously in terms of his physical, mental and emotional health as well as suffering other ongoing actual and compensatory damages as a result of the Defendant's unlawful treatment towards him.

## COUNT 1 ON BEHALF OF ALL PLAINTIFFS
### RACE DISCRIMINATION / RACIALLY HOSTILE WORK ENVIRONMENT
### 42 USC Section 1981

44. Plaintiffs are members of a protected group on the basis of their race (African Americans). Plaintiffs were all subjected to disparate treatment and hostile working environments due to their race on account of Defendant's racially hostile treatment towards them in violation of U.S.C. § 1981.

45. Defendant, by and through its agents, began a pattern and practice of targeting the Plaintiffs through systematic race-based harassment and utter disregard of their complaints of race discrimination. Plaintiff's similarly situated Caucasian colleagues were not subjected to such

6

treatment, as Defendants made no efforts to enforce their own anti-harassment policies with respect to Plaintiffs.

46. Plaintiffs allege that the on the job racially hostile treatment was guised as Defendant made promises that Plaintiffs' protected complaints would be addressed. Nevertheless, these promises were purely pretextual. Plaintiffs allege that the Defendant, through its Agents, initiated discriminatory and hostile practices against Plaintiffs and were reckless, wanton, and intentional in the race discrimination based on their race to wit to include:

   a. As to Plaintiff Alston: Defendant has used Plaintiff Alston to train less qualified Caucasian workers while paying Plaintiff Alston less money than his similarly situated and lesser qualified Caucasian counterparts while all the while ignoring his requests to be brought to pay parity as his Caucasian colleagues. Defendant has also subjected Plaintiff Alston to racially hostile mistreatment and racial animus and daily hostility and harassment.

   b. As to Plaintiff Austin: Defendant, by and through its agent Infinger, racially discriminated against Plaintiff Austin by demoting Plaintiff Austin, using Infinger to speak down to and harass Plaintiff Austin in a racially hostile and harassing manner during 2019, and prevent Plaintiff Austin from exercising the same privileges and working in the same light duty environment as his similarly situated Caucasian colleagues under like circumstances.

   c. As to Plaintiff Bennett: Defendant allowed Infinger to racially harass and continually racially discriminate against Plaintiff Bennett in terms of mistreatment and work assignments to include sending African American employees to work in unsanitary and undesirable areas of the plant all to the exclusion of Caucasian workers while allowing Caucasian workers to work in desirable assignments. In addition, Infinger openly mistreated the African American workers and acted as an open "slave driver" as he meted out severe mistreatment towards the African American workers. Infinger also promoted a racist as a lead (Lake) over Plaintiff Bennett in an effort to intimidate and harass him.

   d. As to Plaintiff Washington: Defendant allowed Infinger to racially harass and continually racially discriminate against Plaintiff Washington by holding up and denying his promotional opportunities. Defendant allowed Infinger to racially harass and continually racially discriminate against Plaintiff Washington in terms of mistreatment and work assignments to include sending African American employees to work in unsanitary and undesirable areas of the plant all to the exclusion of Caucasian workers while allowing Caucasian workers to work in desirable assignments. Defendant racially discriminated and retaliated against Plaintiff by subjecting Plaintiff to greater discipline than white employees for the same or similar alleged offenses. Defendant racially discriminated against Plaintiff Washington in terms of allowing lesser qualified Caucasian workers to receive a higher rate of pay and by requiring Plaintiff Washington to work greater shifts without advance notice all to the exclusion of Plaintiff Washington's similarly situated Caucasian colleagues.

47. Knowingly allowing a work place full of racial hostility to exist which injured Plaintiffs and created a racially hostile work environment;

48. In retaliating against Plaintiffs for complaining of the racial discrimination and racially hostile and harassing behavior of the Defendant and its agents;

49. In disparately treating Plaintiffs adversely due to their race in favor of less qualified and similarly situated Caucasian colleagues.

50. In failing to protect Plaintiffs from racial discrimination, preferential treatment, or retaliation, Defendant, and its agents, acted with malice or reckless indifference to the federally protected rights set out under 42 U.S.C. Sec. 1981 and Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. Sec. 2000e et. seq.), the South Carolina Human Affairs Law and the United States Equal Employment Opportunity laws.

51. Plaintiff alleges that the on the job treatment, retaliation, and wrongful termination were pretextual. Plaintiff alleges that the Defendant, through its Agents, initiated discriminatory practices against Plaintiffs based on their race.

52. In failing to protect Plaintiffs from racial discrimination, preferential treatment, or retaliation, Defendant, and its agents, acted with malice or reckless indifference to the federally protected rights set out under 42 U.S.C. Sec. 1981.

53. As a result of Defendant's race discrimination and exposure of Plaintiff to a racially hostile work environment, Plaintiffs have suffered damages in the form of actual, compensatory, consequential, physical, mental, emotional, and other damages. Plaintiffs also believe that a reasonable amount of punitive damages be levied against Defendant on account of its unlawful treatment of Plaintiffs.

## COUNT 2 ON BEHALF OF ALL PLAINTIFFS
## BREACH OF CONTRACT

54. Each and every allegation set forth above is hereby repeated as fully incorporated herein.

55. Defendant publishes and maintains an Employee Handbook, and policies and procedures, which definitely assures employees of their right to report harassment and bullying, and an anti-retaliation clause and an Employee Corrective Action Process Requirement Matrices (ECAPR) which sets forth disciplinary processes.

56. Defendant further states, in its Employee Handbook, that it is an Equal Opportunity employer, when it declares that there will be no discrimination as to race, color, gender, age, religion, disability, national origin, or veteran's status. Defendant further states, in its handbook, that it will comply with the requirements of the law in implementing equal employment decisions.

57. Plaintiffs and Defendant entered into a binding and valid contract whereby Plaintiffs relied on Defendant's, through its agents, reassurance that pursuant to the handbook and the above policies, and procedures. Plaintiffs also relied on the Defendant's reassurance that it

must follow its Equal Employment Opportunity policy when promoting its employees, paying its employees, and its treatment of its employees regarding its EEO policies and regarding investigating complaints of harassment and that discipline would be in accordance with the ECAPR.

58. Plaintiffs agreed to fulfill the duties of their positions in exchange for valuable consideration and salaries with the promise of being protected from race discrimination, retaliation, and racial harassment.

59. Plaintiff performed their job duties with due diligence, however Defendant, through its agents, unjustifiably failed to perform its duties by racially discriminating against and racially harassing each Plaintiff and by failing to protect Plaintiffs from the retaliatory actions of its agents and by retaliating against Plaintiffs due to their protected complaints as stated above.

60. All of these actions violate the contractual anti retaliation provisions within Defendant's employment handbook (contract), and other contractual policies and procedures of the Defendant. Further, Defendant failed to follow its Equal Employment policy and ECAPR when it failed treat Plaintiff equally to its Caucasian employees as stated more fully above.

61. Defendant, and its agents, had a responsibility to ensure that Plaintiffs would not be subjected to race discrimination. Defendant, through its agents, instead chose to do such, retaliated against Plaintiffs when Plaintiffs complained within their management structure pursuant to their own policies and procedures and anti-harassment policies, and failed to treat Plaintiff similarly to his Caucasian counterparts under like scenarios, all in violation of the contractual guarantees provided to Plaintiffs by Defendant in the employment handbook and other contractual documents.

62. Defendant's conduct, by and through its agents, were done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract.

63. As a result of Defendant's breach of contract, Plaintiffs have suffered actual, compensatory, physical, mental, emotional and consequential damages stemming from the breach and other such damages as are allowable by law.

## COUNT 3 ON BEHALF OF ALL PLAINTIFFS
## BREACH OF CONTRACT ACCOMPANIED BY A FRAUDULENT ACT

64. Each and every allegation set forth above is hereby repeated as if fully incorporated herein.

65. Defendant, by and through its agents, has failed to fulfill its obligation under its own written policy and has breached the terms thereof by reason of an intentional design on its part to defraud Plaintiffs.

66. In furtherance of such intentional design, Defendant, through its agents, intentionally and maliciously placed Plaintiffs in a position of being subjected to extreme racial harassment

9

and disparate treatment under the guise of protecting them from the same. Defendant ensured Plaintiffs that they would not be subjected to the racially disparate treatment, harassment, and other policy violations which Defendant continuously meted out to Plaintiffs. It became readily apparent to Plaintiffs that Defendant's false reassurances were fraudulent as Defendant's continual violations of their own policy demonstrated.

67. Defendant's conduct, by and through its agents, was done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract and handbook.

68. As a result of Defendant's race discrimination and exposure of Plaintiffs to Defendant's fraudulent breaches of contract, Plaintiffs have suffered damages in the form of actual, compensatory, consequential, physical, mental, emotional, and other damages. Plaintiffs also believe that a reasonable amount of punitive damages be levied against Defendant on account of its unlawful treatment of Plaintiffs and fraudulent contractual breaches.

## COUNT 4 ON BEHALF OF ALL PLAINTIFFS
### RETALIATION (Section 1981)

69. Each and every allegation set forth herein above is hereby repeated as fully incorporated herein.

70. Plaintiffs were repeatedly subjected to and protested the violations of their federally protected rights within the Defendant's administrative structure all to no avail as such complaints merely subjected Plaintiffs to being mistreated in a retaliatory manner and to a continuance of unlawful racial harassment and retaliation as stated above.

71. After the Plaintiffs informed Defendant of the racial harassment and mistreatment that Plaintiffs daily were exposed to (protected complaints), Defendant retaliated against Plaintiff by practicing a continuing pattern of animus, harassment, and denial of opportunities and relocations.

72. Due to the retaliatory acts of the Defendant, its agents and employees, Plaintiffs are entitled to injunctive relief and/or civil damages, back wages, plus interest, payment for lost wages, and punitive damages.

73. Accordingly, Plaintiff are entitled to compensatory and punitive damages as a result thereof as Plaintiffs have suffered damages in the form of actual, compensatory, consequential, physical, mental, emotional, and other damages. Plaintiffs also believe that a reasonable amount of punitive damages be levied against Defendant on account of its unlawful treatment of Plaintiffs.

## COUNT 5 ON BEHALF OF ALL PLAINTIFFS
### PROMISSORY ESTOPPEL

74. Plaintiffs reiterate each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

75. That Defendant deliberately made promises to Plaintiffs when the Defendant expected that the Plaintiffs would rely on those promises, specifically: Defendant's guarantees that Plaintiffs would be protected from retaliation and other unlawful mistreatment on account of any reports of unlawful and unethical practices engaged in by Defendant and/or its agents, as well as the specific promises contained in Defendant's handbook and Defendant's representations assuring them that if they complied with Defendant's policies, that their employment rights would be protected to work in an environment free from retaliation and mistreatment; this did not occur.

76. Those promises were known by the Defendant to have created reasonable expectations in the Plaintiff that the Plaintiffs would be protected against harassment, retaliation, and denial of job promotions and mistreatment stemming from protected reports.

77. That Plaintiffs relied to their detriment upon those promises made by the Defendant.

78. Injustice can only be prevented by enforcing the Defendant's promises.

79. The Defendant's breach of its promises and assurances proximately caused the damages previously described in the complaint, said damages were foreseeable and the Defendant's conduct causing these damages was attended by malice, willfulness, insult and abuse, thus entitling the Plaintiffs to recover punitive as well as actual damages.

## COUNT 6 ON BEHALF OF PLAINTIFF AUSTIN
## WORKERS' COMPENSATION RETALIATION

80. Plaintiff realleges and incorporates by reference every allegation contained in the proceeding paragraphs of this Complaint as though set forth herein.

81. Defendant's acts violate the South Carolina Worker's Compensation Retaliation Statute, South Carolina Annotated Section 41-1-80 as to Plaintiff Austin.

82. In retaliation for Plaintiff's attempts to avail himself of the benefits and protections of the Worker's Compensation Act. Defendant retaliated against him as indicated above by demoting Plaintiff and by refusing Plaintiff the benefit of allowing him to work light duty with the same terms and benefits of other similarly situated workers.

83. Defendant's acts violate the South Carolina Worker's Compensation Retaliation Statute, South Carolina Annotated Section 41-1-80.

84. That upon information and belief, Plaintiff Austin's unlawful retaliation was a proximate result of him having filed a Worker's Compensation claim against Defendant.

85. As a proximate result of the wrongful acts of Defendant herein alleged, Plaintiff has extreme anxiety, medical injuries, and physical and mental damages.

86. That upon information and belief, Plaintiff is entitled to an award of all statutorily permitted damages to include actual damages, compensatory damages, and other such damage awards as the Court deems fit.

## JURY TRIAL REQUEST

87. Plaintiffs request a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray that this Honorable Court declares that Defendant's actions complained of herein violated the rights guaranteed to Plaintiffs and issue its judgment:

(1) Declaring the actions complained of herein illegal;

(2) Issuing an injunction enjoining the Defendant, its agents, employees, successors, attorneys and those acting in concert or participation with the Defendant, and at its direction from engaging in the unlawful practices set forth herein and any other employment practices shown to be in violation of 42 USC Section 1981 (race discrimination / racially hostile work environment / retaliation), breach of contract, breach of contract with fraud, promissory estoppel, workers' compensation retaliation (as to Plaintiff Austin), and the common laws of the State of South Carolina.

(3) Awarding Plaintiffs compensatory and punitive damages for each Cause of Action contained herein as appropriate, which the jury should find appropriate as a result of the Defendant's unlawful discriminatory actions taken as the result of Plaintiffs' race and other pled causes of action; including mental anguish, pain and suffering, harm to Plaintiffs' economic opportunities, any back pay, front pay and future earnings with cost of living adjustments, prejudgment interest, fringe benefits, and retirement benefits;

(4) Awarding Plaintiffs their costs and expenses in this action, including reasonable attorney fees, and other litigation expenses; and

(6) Granting such other and further relief as may be just and necessary to afford complete relief to the Plaintiffs as this Court may deem just and proper.

Respectfully submitted,

/s/ Donald Gist_____
Donald Gist, Esquire Federal ID# 7178
Aaron Wallace, Esquire Federal ID # 11469
***GIST LAW FIRM, P.A.***
4400 North Main Street (29203)
Post Office Box 30007
Columbia, South Carolina 29230
Tel. (803) 771-8007
Fax (803) 771-0063
Email: dtommygist@yahoo.com
           aaronwallace.gistlawfirm@gmail.com

September 20, 2019